Parole Violators — Good Time Credits 1. Under the provisions of 57 O.S. 138 [57-138] (1968), returned parole violators should be deprived of all credits, whether for (1) good conduct, (2) work performed, (3) blood donated, or (4) jail term previously served, earned prior to their release on parole. Jail time, when applicable, should be added to the list of good time deductions to be revoked. 2. An inmate returned as a parole violator or as a conditional release violator must be given credit for good time conduct earned after his return by consideration of his actual time previously served rather than by considering him to have commenced a new term at the time of his return. The Attorney General has had under consideration your request for an opinion on the legality of certain proposed procedures relating to the computation of time to be served by convicted felons sentenced to the custody of the Department of Corrections. The proposals, which you indicate are based upon your reading of 57 O.S. 138 [57-138] (1968) (O.S.L. 1968, ch. 255), are as follows: "1. To deprive each and every inmate returned as a parole violator of good time, work credits, and blood credits earned during his pre-parole incarceration, "2. To compute post-revocation good time, work credits, and blood credits as if he were serving a sentence equivalent to the unexpired term of the original sentence, and "3. To apply the same procedures in all respect to conditional release violators as are described for parolees above." The said Section 138 to which you refer is the basic statute on so-called "good time" allowances for inmates of state penal institutions. It was originally enacted in 1915 and since has been amended several times, including its most recent amendment as O.S.L. 1968, ch. 255, supra. In its present form it provides for certain deductions to be made from the term of an inmate's sentence for (1) good conduct, (2) work performed, and (3) donation of blood while an inmate. It further provides that any "jail terms" served prior to entering the penal institution may be deducted for first termers with good conduct records. Of particular pertinence to this opinion is the fact that said Section 138 in its present form also provides that: ". . . Inmates on parole who are returned to the institution as parole violators shall be deprived of any credits earned up to the date of their; release on parole. . . ." (Emphasis added) We note that this quoted portion of the statute was adopted in the 1968 amendment and substantially changes a previous provision, now deleted, which read: ". . . Inmates on parole who are returned to the institution as parole violators shall retain the credits earned up to the date of their release on parole . . . ." This previous provision in Section 138 was in at least partial conflict with another statute, to-wit: 37 O.S. 332.14 [37-332.14] (1961), which says: "Upon the revocation by the Governor of a parole, the same shall automatically cancel all accumulated credits for work and good behavior and the same shall not thereafter be restored except by recommendation of the Classification Committee and written order of the Warden of the penal institution where the former parolee is incarcerated." We note that Section 37 O.S. 332.14 [37-332.14], supra, has not been repealed and is therefore presumably a valid and effective provision of law at this time, at least insofar as it applies to revocation of (1) good conduct credits and (2) work credits for an inmate. We would further note, however, that its provisions as to the recommendation for restoration of such credits by the Classification Committee of the Penitentiary would presently be inoperative inasmuch as the statutes creating the Classification Committee have since been repealed. (See the Oklahoma Corrections Act of 1967 (57 O.S. 501 [57-501] — 57 O.S. 524 [57-524] (1968)) with its specific repeal of 57 O.S. 201 [57-201] — 57 O.S. 207 [57-207] (1961)). In any event it seems abundantly clear that the Legislature by its 1968 amendment to Section 138, supra, intended that returned parole violators should be deprived of all credits, whether for (1) good conduct, (2) work performed, (3) blood donated, or (4) jail term previously served, earned prior to their release on parole. And we therefore conclude that your proposal No. 1 above is not only valid and legal but is required by law. We further conclude that you should add credit for "jail time" (when applicable) to the list of good time deductions to be revoked. We note that Section 138, supra, and Section 332.14, supra, relate only to the revocation of "credits earned up to the date of release on parole" and "accumulated credits", respectively, implying at least that credits may be earned after revocation and return. There is, however, other language in Section 138 which indicates that only a "convict who shall have no infractions of the rules and regulations of the prison or laws of the state recorded against him" should be given credit for good conduct time. This last quoted language could be interpreted as meaning that only an inmate with a good conduct record for his entire term (and including his time on parole) would be entitled to any good conduct deductions. The only Oklahoma case pertinent to this point which we have found is Simpson v. Page, Okl. Cr., 416 P.2d 635 (1966), wherein the Court of Criminal Appeals held that an inmate returned to the state penitentiary from a revoked leave (which was said to be the same as a revoked parole) would be entitled to good conduct, work, and blood donation credits earned after his return. This opinion apparently relied upon Section 332.14, supra, and did not construe the last quoted language from Section 138, supra. While it is not altogether clear from the language of the opinion, the court apparently assumed that the Classification Committee, since repealed as noted previously, would approve the earning of credits after return of the inmate. We take further note that at least two federal cases construing federal "good time" statutes which are similar though not identical to our state statutes make references to the earning of credits after return from parole or conditional release. See McKinney v. Taylor, 358 F.2d 689
(10th Cir. 1966), and Wooten v. Wilkinson, 265 F.2d 211
(5th Cir. 1959). When statutes relating to good time may be construed in more than one way, they should be construed in the manner which will entitle an inmate to his discharge at the earliest time. 72 C.J.S. Prisons Section 21 e (1). This rule and the discussion contained in the preceding paragraph considered together, we conclude that an inmate of a state penal institution may resume earning good time credits after his return to an institution as a parole violator. This conclusion would be dispositive of your proposal No. 2, except for the fact that Section 138's provisions as to credit for good conduct are based on a "schedule of credits" which is, in effect, a sliding scale rather than a fixed rate. That is to say that while credit for work performed (at the rate of two days' deduction for every six days worked) and credit for blood donated (at the rate of 20 days' deduction for every pint are granted at the same rate no matter what the term of a sentence, the rate for credit for good conduct varies in relation to the term of the sentence. The statute presently provides for a deduction of two (2) months in each of the first two (2) years, four (4) months in each of the next two (2) years, and five (5) months in each of the remaining years of a term. It thus may make considerable difference to a returned parole violator if he is considered as beginning a new term upon his return, or, in the alternative, if he is considered as resuming his term. We have found no Oklahoma case nor cases from any other jurisdiction interpretive of this question. In the absence of any case authority and therefore in reliance upon the previously stated rule that such statutes should be considered most favorably for the inmate's benefit, we conclude that the returned parole violator should be considered as resuming his term rather than as beginning a new term. We are therefore of the opinion that your proposal No. 2 is invalid and illegal in its present form to that extent. Prior to enactment of the Oklahoma Corrections Act of 1967, supra, an inmate of a state penal institution was entitled to his outright discharge from custody and confinement when the calendar time served added to all of the time for good conduct, work, etc., which he had earned or otherwise had credited to him equaled the term of his sentence. See Attorney General's Opinion No. 67-164 and cases cited therein. This was changed, however, by Section 12 of said Act (57 O.S. 512 [57-512] ; O.S.L. 1967, ch. 261, Section 12), which provides that the inmate's release shall be conditional, as follows: "When a prisoner has served his term or terms in prison, less credits for good conduct, and is to be released from prison, the Director of Corrections shall prescribe as a condition of his release that he be under the supervision of the Division of Probation and Parole of the Department of Corrections and that he comply with specified requirements until the expiration of the maximum term or terms for which he was sentenced. The Probation-Parole Officer shall upon information sufficient to give him reasonable grounds to believe that the release has violated the terms of and conditions of his release, notify the Deputy Director of the Division of Probation and Parole. The Deputy Director of the Division of Probation and Parole, if he determines that the facts justify such action, shall issue a warrant for the arrest of any such releasee and any such warrant shall have the force and effect of any warrant of arrest issued by District Court in this State. Any such releasee shall, after arrest, be immediately incarcerated in the nearest county jail to await action of the Director as to revocation of his release." This is the only provision of Oklahoma law which we have found relating to the conditional release of inmates of penal institutions. We note that the above quoted section makes no specific provision for what is to be done with the inmate after revocation of his conditional release, but we find that the statute strongly implies that he is to be returned to the penal institution for completion of the full "term or terms for which he was sentenced." We note that in construing the similar though not identical federal statutes the federal courts have treated inmates who violate the terms of a conditional release as if they were parole violators. See McKinney v. Taylor, 358 F.2d (10th Cir. 1966; and Wooten v. Wilkinson, 265 F.2d 211 (5th Cir. 1959). We think that any other interpretation of our conditional release statute, to-wit; Section 12, supra, would result in an absurdity. We therefore conclude that it is proper and legal to apply the same procedures to conditional release violators as to parole violators. We therefore further conclude that your proposal No. 3 is valid and legal except insofar as our conclusions regarding your proposal No. 2 are applicable. In summary then, it is the opinion of the Attorney General that your proposed procedures as described are valid and legal except that an inmate returned as a parole violator or as a conditional release violator must be given credit for good conduct time earned after his return by consideration of his actual time previously served rather than by considering him to have commenced a new term at the time of his return. (Hugh H. Collum) ** SEE: OPINION NO. 69-223 (1969) **